RECEIVED

MAR 3 0 2016 CYY

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

SOUTHWEST AMBULATORY
BEHAVIORAL SERVICES, INC.

CIVIL ACTION NO. 6:15-00008

VERSUS

JUDGE DOHERTY

SYLVIA MATHEWS BURWELL,
SECRETARY OF THE UNITED
STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES

MAGISTRATE JUDGE HANNA

## MEMORANDUM RULING

Currently pending before the Court are cross-motions for summary judgment, filed by plaintiff Southwest Ambulatory Behavioral Services, Inc. [Doc. 9], and defendant Sylvia Mathews Burwell, Secretary of Health and Human Services ("Secretary") [Doc. 11]. Plaintiff is a Medicare certified community mental health center. By way of its pending motion, plaintiff seeks judgment in its favor, reversing the November 5, 2014 final decision of the Administrator of the Centers for Medicare and Medicaid Services ("Administrator"), which determined the Fiscal Intermediary's adjustment to the allocation of plaintiff's cost for the fiscal year 2000 cost report was proper.[1] [Doc. 9-1, pp. 6, 13]  Conversely, defendant seeks a Ruling affirming the Administrator's decision and entering a judgment of $14,750 in the Secretary's favor, plus interest. [Doc. 11-1, p. 9] For the

---

[1]The Fiscal Intermediary adjusted plaintiff's cost report for fiscal year 2000. The Provider Reimbursement Review Board ("PRRB") reversed the decision of the Fiscal Intermediary. The Administrator reversed the decision of the PRRB, determining the Intermediary's adjustment to plaintiff's cost report was proper.  The Secretary has assigned the function of reviewing Board decisions to the Administrator, whose decisions are considered the final decision of the Secretary. 42 C.F.R. § 405.1875.

following reasons, plaintiff's motion is DENIED, and defendant's motion is GRANTED.

## I.   Statutory and Regulatory Background

"The Medicare Act establishes a health insurance program for elderly and disabled persons." *Paladin Community Mental Health Center v. Sebelius*, 684 F.3d 527, 528 (5th Cir. 2012)(citing 42 U.S.C. § 1395 *et seq.*) "Medicare Part A provides coverage for inpatient hospital services and institutional care, *see* §§ 1395c to 1395i–5, while Medicare Part B provides supplemental coverage for physician and outpatient department services. §§ 1395j to 1395w–4." *Id.* Community mental health centers, such as plaintiff herein, are eligible to receive Medicare Part B payments for certain qualifying outpatient services, including partial hospitalization program services. *Id.* (citing §§ 1395x(s), 1395x(ff)(1)–(3)).

When the Medicare program was first implemented, it paid providers of partial hospitalization services based upon their specific costs. *Id.* at 528; *see also Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 405 (1993). In 1997, in an attempt to control costs and increase efficiency in the delivery of outpatient services, Congress directed the Secretary to establish an outpatient prospective payment system ("OPPS"), where providers would be paid predetermined rates for partial hospitalization services.[2] *Paladin* at 528-29 (citing § 1395l(t)(1)); *Good Samaritan* at 405; *see also* Balanced Budget Act of 1997, Pub. L. No. 105-33, 111 Stat. 251 (codified at 42 U.S.C. § 1395l(t)). Thus, providers of partial hospitalization services would no longer be paid under the prior, cost-based system, but rather, "under a prospective payment system established by the Secretary in

---

[2]Almost 15 years prior, Congress had directed the Secretary to establish an *inpatient* prospective payment system for the reimbursement of *inpatient* hospital operating costs under Medicare Part A. *See* Social Security Amendments of 1983, Pub. L. No. 98-21, 97 Stat. 65.

accordance with this subsection."[3] 42 U.S.C. § 1395l(t)(1)(A); *see also Community Care, LLC v. Leavitt*, 537 F.3d 546, 547 (5th Cir. 2008). In accordance with Congress' directive, the Secretary promulgated regulations set forth at 42 C.F.R. §§ 419.1 - 419.70 implementing OPPS, which went into effect on August 1, 2000.

Private insurance companies known as "fiscal intermediaries," acting as agents of the Secretary, process reimbursements to providers. *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 400-01 (1988). At the close of each fiscal year, a provider is required to file a Medicare cost report with its intermediary, setting forth all costs for which the provider claims reimbursement. 42 C.F.R. §§ 405.1801(b)(1), 413.24; *see also Leavitt* at 547. The intermediary then audits the cost report and makes a final determination of the total amount of reimbursement owed by Medicare. The intermediary's final determination is set forth in a written "notice of program reimbursement." 42 C.F.R. § 405.1803. If a provider is dissatisfied with the intermediary's final determination, the provider may request a hearing before the Provider Reimbursement Review Board ("PRRB"). 42 U.S.C. § 1395oo(a); *see also* 42 C.F.R. §§ 405.1807, 405.1835. By request, or on its own motion, a decision by the Board is subject to review by the Secretary's delegate, the Administrator of CMS. 42 U.S.C. § 1395oo (f)(1); 42 C.F.R. § 405.1875. Once a final decision by the Administrator is rendered, the provider may seek judicial review of the final agency decision in federal district court within 60 days. 42 U.S.C. § 1395oo (f)(1).

---

[3]Section 1395l, subsection (t)(2), provides guidance to the Secretary regarding the drafting of the required regulations implementing OPPS.

## II.     Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). As noted by the Fifth Circuit:

> The summary judgment procedure is particularly appropriate in cases in which the
> court is asked to review or enforce a decision of a federal administrative agency. The
> explanation for this lies in the relationship between the summary judgment standard
> of no genuine issue as to any material fact and the nature of judicial review of
> administrative decisions.... [T]he administrative agency is the fact finder. Judicial
> review has the function of determining whether the administrative action is
> consistent with the law—that and no more.

*Girling Health Care, Inc. v. Shalala*, 85 F.3d 211, 214-15 (5th Cir. 1996)(alterations in

original)(quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL

PRACTICE AND PROCEDURE: Civil 2d § 2733 (1983)).

Judicial review of a final agency decision is governed by 42 U.S.C. § 1395oo(f)(1), which

incorporates the standard of review applicable to actions arising under the Administrative Procedure

Act, 5 U.S.C. § 706 ["APA"]. *Leavitt* at 548.  A court may vacate the agency's decision if it is

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §

706(2)(A); *see also Leavitt* at 548. The court must begin with the presumption that the agency's

decision is valid; it is plaintiff's burden to overcome that presumption by showing the agency's

decision was erroneous. *Memorial Hermann Hosp. v. Sebelius*, 728 F.3d 400, 405 (5th Cir. 2013).

The agency's legal determinations are reviewed *de novo*, while its factual findings are

reviewed only for substantial evidence, "i.e., that which is relevant and sufficient for a reasonable

mind to accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The

court "must be highly deferential to the administrative agency whose final decision is being

reviewed." *Id.* (internal quotation marks omitted).

### III.    Factual Background and Analysis

To transition to the OPPS system, on March 22, 2001, the Centers for Medicare and Medicaid Services issued Provider Reimbursement Manual, Part 2, Chapter 18, HCFA Publication 15-2 Transittal No. 4 ("Transmittal No. 4"), which revised the Outpatient Rehabilitation Provider Cost Reporting Form (Worksheet C in PRM 15-2 § 1809), effective for services rendered on or after August 1, 2000. The revisions outlined a computational methodology for allocating costs of outpatient rehabilitation providers on the cost report based on the August 1, 2000 effective date for OPPS.  The computational methodology in Transmittal No. 4 set forth a process to split/allocate costs by calculating a cost to charge ratio based upon the full cost reporting period, then applying that ratio to Medicare charges for each of the short periods (i.e. pre- and post-August 1, 2000 cost periods).

Plaintiff contends the method of calculating reimbursement set forth in Transmittal No. 4 constitutes an "alternative" computational methodology, which "is not compliant with federal regulations." [Doc. 9-1, pp. 4-5] According to plaintiff, the computational methodology for calculating costs set forth in Transmittal No. 4 "may be used only when the actual costs cannot be determined and that the 'actual costs' must be used when they are ascertainable." [Doc. 9-1, p. 6] In support of its position, plaintiff cites to various Medicare regulations and certain portions of the Provider Reimbursement Manual, asserting it is a "fundamental principle" of Medicare reimbursement that reasonable costs of services are the actual costs incurred. [Id. at 7] Plaintiff asserts the methodology in Transmittal No. 4 results in "an incorrect cost allocation," which does not reflect "the actual costs of the Plaintiff's services to Medicare beneficiaries." [Id. at 4] Plaintiff

urges this Court to allow plaintiff to utilize a method of cost allocation for its fiscal year 2000 cost report that does not comply with the directions provided in Transmittal No. 4. More specifically, plaintiff contends it should be allowed to use two separate cost to charge ratios - one for January through July of 2000, and a second for August to December 2000 - whereas Transmittal No. 4 directs providers to determine the cost to charge ratio utilizing the full fiscal year. Plaintiff contends the method it proposes would reflect its actual costs for the time period in question, whereas utilization of the method proscribed in Transmittal No. 4 results in a disallowance of $239,493.97 in costs plaintiff claimed.[4]  [Doc. 9-1, p. 13; Doc. 11-3, p. 9]

Plaintiff's fiscal intermediary rejected plaintiff's argument and adjusted plaintiff's cost report by utilizing the method set forth in Transmittal No. 4. The Provider Reimbursement Review Board reversed the intermediary's adjustment and ruled in favor of plaintiff.  On November 5, 2014, the Administrator reversed the decision of the PRRB, holding that the fiscal intermediary's adjustment to the allocation of plaintiff's cost was proper.  Plaintiff now appeals to this Court, seeking judicial review and reversal of the Administrator's decision.

Plaintiff cites the Court to 42 U.S.C. § 1395x(v) to support its position. According to plaintiff, the foregoing statute "provides that 'the reasonable costs of any services *shall be the cost actually incurred.*'" [Doc. 9-1, p. 7 (emphasis in plaintiff's brief)] Plaintiff has omitted the vast majority of the definition of "reasonable costs" contained in Section 1395x. The statute defines reasonable costs, in pertinent part, as follows:

> The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient

---

[4]Ultimately, it was determined plaintiff owed the Medicare Program an additional $14,750. [Doc. 8-1, pp. 56, 58, 74, 275-281]

delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services. . . . In prescribing the regulations referred to in the preceding sentence, the Secretary shall consider, among other things, the principles generally applied by national organizations or established prepayment organizations (which have developed such principles) in computing the amount of payment, to be made by persons other than the recipients of services, to providers of services on account of services furnished to such recipients by such providers. Such regulations may provide for determination of the costs of services on a per diem, per unit, per capita, or other basis, may provide for using different methods in different circumstances, may provide for the use of estimates of costs of particular items or services, may provide for the establishment of limits on the direct or indirect overall incurred costs or incurred costs of specific items or services or groups of items or services to be recognized as reasonable based on estimates of the costs necessary in the efficient delivery of needed health services to individuals covered by the insurance programs established under this subchapter, and may provide for the use of charges or a percentage of charges where this method reasonably reflects the costs. Such regulations shall (i) take into account both direct and indirect costs of providers of services (excluding therefrom any such costs, including standby costs, which are determined in accordance with regulations to be unnecessary in the efficient delivery of services covered by the insurance programs established under this subchapter) in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs. . . .

42 U.S.C. § 1395x(v)(1)(A).

Thus, Congress has determined that the "reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used . . . in determining such costs. . . ." *Id.*[5] Indeed, as

[5]According to the testimony of plaintiff's CPA before the Provider Reimbursement Review Board, in anticipation of the implementation of the OPPS system, plaintiff became more frugal by eliminating certain staff positions, and therefore incurred higher costs pre-August 2000 than post-August 2000. [Doc. 8-1, pp. 156-57] Thus, it would seem the "cut costs" constitute an example of "incurred cost[s] found to be unnecessary in the efficient delivery of needed health services," which are to be

set forth above, Congress has authorized the Secretary to promulgate all manner of reimbursement calculation methods as long as they reasonably reflect actual costs. *Id.*; *see also County of Los Angeles v. Sullivan*, 969 F.2d 735, 742 (9th Cir. 1992).

Plaintiff additionally cites the Court to the following regulations in support of its position that it is entitled to actual costs, and thus, the methodology in Transmittal No. 4 is contrary to federal regulations: 42 C.F.R. §§ 413.9, 413.13, 413.24, 413.60, and 413.64. [Doc. 9-1, pp. 5, 7-11] The foregoing regulations are all contained in Title 42, Chapter, IV, Subchapter B, Part 413, which governs payment for services furnished by hospitals, critical access hospitals, skilled nursing facilities, home health agencies, end-stage renal disease facilities, organ procurement agencies, and histocompatibility laboratories. 42 C.F.R. § 413.1. Payment for partial hospitalization services furnished by community mental health centers, such as plaintiff, is regulated at part 419. *See* 42 C.F.R. § 419.21(c). Thus, the Court finds plaintiff's citations to regulations found in Part 413 are inapplicable to the matter at hand.

In sum, other than plaintiff's blanket assertion that the methodology in Transmittal No. 4 does not reflect actual costs, plaintiff has cited this Court to no evidence or argument demonstrating the methodology set forth in Transmittal No. 4 results in reimbursement of less than "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." The Court finds the statutory directive that the amount of payment for providers such as plaintiff "shall be determined under a prospective payment system established by the Secretary," 42 U.S.C. § 1395l(t)(1)(A), the statutory directive granting the

---

excluded from "the cost actually incurred" for purposes of determining "reasonable costs."

Secretary vast discretion in promulgating reimbursement calculation methods, § 1395x(v), and CMS policy that cost to charge ratios for CMHCs under OPPS are to be calculated using the provider's most recent full year cost reporting period even where a provider "has a short period cost report," [Doc. 11, ¶¶ 24, 35[6]], all provide a reasonable basis for the Secretary's determination in this matter that plaintiff's cost to charge ratio for fiscal year 2000 was to be determined using the full fiscal year. Plaintiff has not convinced the Court that the Secretary's method of calculating cost to charge ratios is arbitrary or capricious. Accordingly, plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted.

## V.    Conclusion

For the reasons set forth above, the motion for summary judgment [Doc. 9] filed by plaintiff, Southwest Ambulatory Behavioral Services, Inc., seeking reversal of the November 5, 2014 final decision of the Administrator of the Centers for Medicare and Medicaid Services ("Administrator") is DENIED. [Doc. 9] The motion for summary judgment [Doc. 11] filed by defendant Sylvia Mathews Burwell, Secretary of Health and Human Services ("Secretary") is GRANTED. Accordingly, the Court finds defendant is entitled to judgment in her favor in the amount of $14,750 in her favor, plus interest, in accordance with 42 U.S.C. § 1395oo(f).

Within fifteen (15) days of issuance of this Ruling, the parties are to jointly submit a final judgment, approved as to form.

---

[6]CMS policy, as set forth in the Medicare Claims Processing Manual, notes a full year report is utilized because "a partial year cost report is unlikely to be representative of a hospital's true yearly costs." [Doc. 11-3, ¶¶ 24, 35] While interpretations contained in agency manuals are not entitled to *Chevron*-style deference, they are "entitled to respect" to the extent the interpretations have the "power to persuade." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)) (internal quotation marks omitted).

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this 30th day of March, 2016.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE